**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 2:22-CV-02449-TC-TJJ** |
| **PHILIP S. BROWN,** *et al.,* | |
| **Defendants.** | |

<u>**ORDER GRANTING IN PART**</u>
<u>**PLAINTIFF'S MOTION TO APPOINT RECEIVER**</u>[1]

This matter comes before the Court on Plaintiff United States of America's Motion to

Appoint Receiver (ECF No. 77). The United States requests an order, pursuant to 26 U.S.C. §§

7402(a) and 7403(d), appointing Cody Petersen as receiver to effectuate the enforcement of

federal tax liens against real property and improvements owned by Defendants Philip S. Brown

and Amber L. Brown ("the Browns"), located at 3540 W. 153rd Terrace, Leawood, Kansas 66224

(the "Subject Property"). The Browns have filed their response in opposition to the motion (ECF

No. 80) and the United States has filed its reply (ECF No. 83). For the reasons discussed below,

the Court grants the motion for appointment of a receiver but based upon the minimal information

provided by the United States, at this point denies without prejudice the appointment of Mr.

Petersen as the receiver.

---

[1] The undersigned Magistrate Judge considers this motion not dispositive of a party's claim or defense and therefore rules on it under the authority conferred by 28 U.S.C. §§ 363(b)(1)(A), 636(b)(3), and Fed. R. Civ. P. 72(a) as a non-dispositive pretrial matter. *See United States v. High Plains Livestock, LLC*, No. 15-CV-680 MCA/WPL, 2016 WL 10591975, at *4 (D.N.M. Jan. 11, 2016) ("[T]he Court concludes that the Magistrate Judge acted within his authority to appoint a receiver"). If any party challenges the authority of the Magistrate Judge to rule on this motion, a specific written objection must be filed within 14 days of service. Fed. R. Civ. P. 72(b)(2).

The Court has previously granted judgment as a matter of law in favor of the United States and against the Browns for their outstanding federal income tax liabilities for the years 2010 through 2015, plus statutory accruals of interest, penalties, and fees; and the Court has ordered that the United States is entitled to enforce its tax liens for those years against the Subject Property.[2] Mr. Brown acknowledges that he currently resides in the Subject Property but hasn't made any mortgage payments since shortly before the tax lien foreclosure action was commenced in 2022.[3] The balance due for the Browns' 2010 through 2015 tax liabilities as of September 24, 2024, including the accrual of statutory interest, penalties, and fees, less any payment or credits, is $756,679.49.[4]

The United States requests that Cody Petersen be appointed receiver to enforce the federal tax liens by taking possession of, preparing for sale, and selling the Subject Property. They have submitted a proposed order appointing Mr. Petersen and setting out in detail the nature and scope of his duties as receiver. The Browns oppose the motion for appointment of receiver on two grounds: (1) the Court should defer or delay ruling on the motion for six months to allow the realtor the Browns have chosen to sell the Subject Property; and (2) if the Court does appoint a receiver, it should reject Mr. Petersen and appoint a more experienced real estate professional instead.

The Court finds the United States is entitled to the appointment of a receiver to effectuate the enforcement of the subject federal tax liens by selling the Subject Property. This Court has

---

[2] ECF No. 73 at 15.

[3] ECF No. 80 at 2 n. 2.

[4] Johnson Decl. ¶ 11 (ECF No. 77-2).

authority to enter orders appointing receivers as necessary or appropriate for the enforcement of the internal revenue laws.[5] And, specifically, the Court may grant the United States' request to appoint a receiver to enforce a tax lien.[6] The Browns do not dispute the authority of the Court to appoint a receiver in this case; the Court's authority is not at issue. Rather the Browns argue the Court should defer or delay the appointment six months so as to allow their realtor to market and sell the Subject Property, or that the Court reject the United States' proposed receiver in favor of a more experienced real estate professional.

The Court dismisses the Browns' first argument, which would allow them to retain possession of the Subject Property for at least another six months, as merely yet another attempt to delay the enforcement of the federal tax liens at issue and ultimate sale of the Subject Property. The Browns' belated interest in attempting to sell the Subject Property some two years after the foreclosure action was commenced, and now even after judgment has been entered on the 2010 through 2015 tax liabilities and an order entered for enforcement of the tax liens against the Subject Property, is too little too late. That ship has sailed. Pursuant to 26 U.S.C. §§ 7402(a) and 7403(d), the United States is entitled to the appointment of a receiver to sell the Subject Property.[7] Furthermore, the Court is unpersuaded by the Browns' argument that a private sale utilizing their realtor, without the requirement of court approval, would result in a faster sale of the Subject Property and maximize the recovery for all parties. To the contrary, while the Court suspects the

---

[5] 26 U.S.C. § 7402(a).

[6] 26 U.S.C. § 7403(d).

[7] The Browns cite two cases, *United States v. Rodgers,* 461 U.S. 677, 709-710 (1983) and *United States v. Davis,* 815 F.3d 253, 256 (6th Cir. 2016), for the proposition that the Court has discretion to allow a private sale process like they propose. ECF No. 80, at 2 n.2 and 4 n.7. Both cases are easily distinguishable from this case and do not support the Browns' argument here.

Browns' realtor would sell the Subject Property, if at all, not until the end of six months in order to allow Mr. Brown to live there that entire time, an independent receiver would have every incentive to sell the property more quickly. Moreover, in the Court's view, the process and procedures provided in the United States' proposed order appointing receiver, including the required court approval of any sale, are likely to yield the highest sales price for the Subject Property.

The Court turns next to the Browns' second argument—that the Court should reject the United States' proposed receiver, Mr. Petersen, and appoint a more experienced real estate professional instead. Mr. Petersen's Declaration states that he is a licensed real estate agent with a significant volume ($2.7 million) in sales over the last three years. In addition to selling real estate, he is also the owner and manager of a three-unit residential building. No other information is provided regarding Mr. Petersen's real estate experience and qualifications. No curriculum vitae has been provided for Mr. Petersen. The United States provided no information regarding how long he has been selling real estate; how much experience he has selling "residential" real estate or even how much of the $2.7 million sold over the past three years was residential real estate; or to what extent he has sold real estate in the market area where the Subject property is located. This dearth of information regarding Mr. Petersen's qualifications and experience is not what the Court expects when a party seeks court-appointment of a receiver. Even after the Browns' response in opposition to Mr. Petersen's appointment raised questions regarding his experience and qualifications, the United States failed in its reply to provide any additional information regarding Mr. Petersen.

Accordingly, although the Court grants the United States' request for appointment of a receiver, in its discretion the Court denies, without prejudice, the United States' request that Mr. Petersen be appointed as the receiver in this case, for failure to provide adequate information

regarding his experience and qualifications as discussed above.[8] **Within fourteen (14) days of entry of this Order**, the United States shall file a supplement to its motion either providing additional information regarding Mr. Petersen's experience and qualifications or propose another real estate professional to serve as receiver with appropriate documentation of their experience and qualifications. If the Browns have any objection to the United States' supplemental filing, they shall file their objection **within seven (7) days of the supplemental filing**. If the Court needs additional information or argument, it will set a hearing; otherwise, the Court will rule based upon the supplemental filing and any objection.

Finally, the Court finds that the proposed order submitted by the United States properly sets out the nature and scope of the duties of the receiver as well as the process and procedures by which the receiver shall take possession of the Subject Property, prepare the property for sale, and market and sell the property. The Court therefore adopts the proposed order, subject to the subsequent determination of the specific individual who shall serve as the receiver.

It is therefore ORDERED that:

1.      The Court will by subsequent order appoint a specified individual as the receiver for the Subject Property, for the purposes of assisting in the enforcement of the federal tax liens including by marketing and selling the Subject Property after securing the same, subject to approval of any purchase contract by this Court prior to closing.

2.      All parties and their heirs, successors, or assigns, including but not limited to any person(s) who may be in possession of the property by permission of the defendants, shall

---

[8] Both sides agree this Court has broad discretion to appoint a receiver in this case. See ECF No. 77 at 2 and ECF No. 80 at 6, citing *United States v. Scherer*, 532 F.Supp.3d 485, 489 (S.D. Ohio 2021).

cooperate fully with the receiver and shall also take all necessary actions to enable the receiver to

convey marketable title to the Subject Property.  Following appointment, the receiver shall have

immediate and unrestricted access to the Subject Property at all reasonable times of day, including

during the period for any occupants to vacate the Subject Property as directed below, and is

authorized to take such steps as the receiver deems appropriate to preserve, protect, and secure the

Subject Property, with the receiver to be reimbursed for the costs of such steps from the sale

proceeds.  The receiver shall bring with him on any visits to the Subject Property multiple copies

of this Order and shall deliver the same to anyone found to be occupying the Subject Property and

shall orally inform such occupant(s) that they are subject to the terms of this Order, subject to the

right to seek relief as provided in paragraph 4 below.

      3.      The Subject Property shall be sold in a manner consistent with judicial sales as

contemplated by 26 U.S.C. §§ 7402(a) and 7403(d), free and clear of all rights, titles, claims, liens,

and interest of the parties to this case, including any rights of redemption, subject to the terms set

forth in this Order, and the proceeds of the sale, to the extent not distributed at closing on the sale

to pay the costs of sale, including any costs incurred by the receiver to preserve, protect, and

secure the Subject Property, and any real estate taxes due and owing at closing which are entitled

to priority under 26 U.S.C. § 6323(b)(6), shall be subject to all unpaid liens and other claims of the

parties in place of the Subject Property, to the same extent and with the same priority, and subject

to the same defenses, as would apply against the Subject Property itself.  The United States may

serve this Order on the Treasurer of Johnson County, Kansas, or any other official or

instrumentality of the County, by any reasonable means that assures notices, and inform the

County that any property tax arrearage or current property taxes due through the date of a sale by

the receiver will be paid from the proceeds of the sale, but that this Court has exclusive

jurisdiction over the Subject Property and that Johnson County shall not take any steps to enforce any local tax liens unless upon the granting by the Court of a motion for leave.

4.        Any persons occupying the Subject Property, including but not limited to Philip Brown and Amber Brown, shall vacate, and depart from the Subject Property within 30 days of the service of this Order on them, leaving in place all fixtures, improvements, and major appliances (refrigerator, stove/oven/range, washing machine, dryer, dishwasher, etc.) without disturbance to the premises, and shall remove therefrom any personal property items other than major appliances, fixtures, or improvements.  Any personal property not so removed shall be deemed abandoned and may be disposed of (or sold) as determined to be appropriate by the receiver. Notwithstanding the foregoing, this Court will entertain, on an expedited basis, any motion or letter filed by any occupant or any other person for relief from this Order that is filed within 14 days of its entry.

5.        If a person fails or refuses to vacate the Subject Property by the date specified in this Order, or as extended by the receiver after consultation with the United States, the United States is authorized to coordinate with the United States Marshals Service to take all actions that are reasonably necessary to have those persons ejected.  The United States Marshals Service is authorized and directed to take any and all necessary actions, including but not limited to, the use of reasonable force, to enter and remain on the Subject Property, which includes, but is not limited to, the land, buildings, vehicles, and any other structures located thereon, for the purpose of executing this Order.  The United States Marshals Service is further instructed and directed to use reasonable force to arrest or evict from the Subject Property any persons who obstruct, attempt to obstruct, or interfere or attempt to interfere, in any way with the execution of this Order, including but not limited to, the refusing to grant access to the receiver, and to prevent any person from

causing damage to the Subject Property at any time prior to sale closing, or otherwise committing waste against the Subject Property.  If the United States discovers that the Subject Property is being damaged in any way, the United States Marshals Service is authorized to intervene in any way deemed necessary to stop the damage or waste without further authorization from Court, including by coordinating with other federal, state, or local law enforcement agencies.

6.      Upon entry of the subsequent order appointing the specified individual as receiver, the receiver is directed to visit the Subject Property and attempt to ascertain if there are any occupants and, if not, to take immediate possession of the Subject Property, including all buildings, improvements, fixtures, appurtenances, materials, and equipment thereon, or if the Subject Property is occupied then to take possession at the time all persons are required to vacate as provided above, to preserve and protect the value of the Subject Property, to put it into saleable condition, and to arrange for the sale of the Subject Property, free and clear of any rights, titles, claims, or interests of any of the parties to this action (including any rights of redemption). Upon taking possession, the receiver may change the locks and shall be reimbursed for that expense.

7.      Philip Brown and Amber Brown and anyone working in concert with them or at their direction, shall not do anything that interferes with the rights or responsibilities of the receiver or that tends to reduce the value or marketability of the Subject Property or cause or permit anyone else to do so, such as causing damage to or committing waste against the Subject Property.  Philip Brown and Amber Brown shall not cause, or permit anyone else to, record any instruments in the county land records, publish any notice, or take any other action (such as running newspaper advertisements, posting signs, or making internet postings) that may directly or indirectly tend to adversely affect the value of the Subject Property or that may tend to deter or discourage potential purchasers from viewing or making offers to purchase the Subject Property or

from completing any purchase. Violation of this paragraph (or any provision of this Order) shall be deemed contempt of court and punishable as such.

8.      The receiver shall have all of the rights and powers necessary to fulfill their obligations under this Order, specifically including, but not necessarily limited to, the power to enter onto the Subject Property, to manage the Subject Property, to collect rents on the Subject Property, to advertise the sale of the Subject Property, and to take any action reasonably necessary to protect and preserve the value of the Subject Property prior to sale, and to put the Subject Property into saleable condition, including making expenditures of funds that are first approved by the United States for reasonable maintenance and improvements, including, but not limited to, the purchase of property and liability insurance, with the receiver to be reimbursed for such expenditures from the sale proceeds. Nothing herein shall be construed to mandate purchase of insurance if the receiver and the United States determine that the costs is too high or not practicable.

9.      The United States may agree to a listing price recommended by the receiver, and subject to the United States' approval, the receiver may make reductions in such price in the event the initial price does not garner sufficient purchase offers. Once a listing price is set, the receiver has authority to accept a purchase offer that is five percent lower than the listing price without further approval of the United States, but subject to the final authorization and approval of the sale by the Court prior to closing. If Philip Brown, or another interested party believe that the initial listing price or any adjustment thereto significantly undervalues the Subject Property, they may file a motion for an order requiring the receiver to adjust the listing price.

10.      The United States may tentatively approve the receiver's acceptance of any purchase contract, subject to approval of the sale by this Court prior to closing.

11.     The following terms shall apply to any sale of the subject property pursuant to this Order:

    a.   The Subject Property shall be offered for sale "as is," with all faults and without any warranties either express or implied.  Any contingencies included in any purchase contract (for example for inspection of fixtures) must be approved by the United States and must be removed within a short, (mutually agreed) time after the receiver signs a purchase contract (which time shall run during the pendency of a motion for court approval of the sale).

    b.   The sale shall be subject to building lines, if established, all laws and governmental regulations (including building and zoning ordinances) affecting the Subject Property, and easements, restrictions, and reservations of records, if any.

    c.   The terms of any purchase agreement shall require the balance of the purchase price to be paid at closing, and will include an earnest money deposit, payable by cashier's or certified check, in an amount determined by the receiver upon consultation with the United States and forfeitable upon the purchaser's failure to perform.  If the Court does not approve the sale pursuant to a purchase contract, the earnest money shall be returned to the purchaser as the exclusive remedy for such disapproval of the sale by the Court.  The receiver may consult with counsel for the United States in assuring that necessary or appropriate modifications are made to any standard local form purchase contract consistent with a receiver's sale and the terms of this Order.

d.  The closing shall not occur until after the sale has been finally authorized and approved by further order of this Court.  At closing, the purchaser or purchasers shall receive a quitclaim or receiver's deed to the Subject Property executed by the receiver, and which shall be accepted for recordation by the appropriate county officials.

e.  If the purchaser fails to fulfill the requirements of subparagraph (c) above, the sale shall be treated as null and void, and the earnest money deposit shall be forfeited as liquidated damages (subject to any lawful defenses of the would-be purchaser, which shall be determined by this Court) and distributed to the United States for application to the federal tax liens except to the extent it agrees to use any of the forfeited deposit to make repairs or improvements or to reimburse the receiver for prior reimbursable expenditures. The Subject Property shall be again offered for sale under the terms and conditions of this Order of sale. The successful purchaser at the new sale shall receive the subject property free and clear of all rights, titles, claims, liens, and interests of the defaulting purchaser.

12.    Except as the Court may otherwise specify in any order approving a particular sale, the proceeds of the sale of the Subject Property shall be distributed as follows: first, to pay the costs of sale, including the receiver's fee and any expenses he incurred to secure and maintain the property, as described in paragraph 14, below; second, to Johnson County, Kansas, to pay any real estate taxes due and owing at closing that are entitled to priority under 26 U.S.C. § 6323(b)(6); third, to North American Savings Bank, FSB, ("NASB") to satisfy its mortgage lien on the property;  and fourth, to the United States to satisfy the federal income tax liabilities of Philip Brown and Amber Brown for any amounts due and owing to the United States for the

federal income tax liabilities of Philip Brown and Amber Brown plus statutory interest, penalties, and fees for the 2010 through 2015 tax years (see ECF No. 73 at p. 11), which, as of September 26, 2024 is $756,679.49. Any proceeds remaining after the aforementioned distributions shall be deposited by the receiver into the Court's registry, and the Court shall then order the Clerk to hold the funds in an interest-bearing account pursuant to Fed. R. Civ. P. 67(b) and Local Rule 67.1, pending a motion for final distribution.

13.     The sales proceeds from the Subject Property shall not be subject to any claim for attorney's fees, including by NASB, except that any closing costs attributed to the sale, including any customary costs of a seller for a closing attorney (if required), shall be paid subject to the approval of the United States.

14.     The receiver shall be (a) compensated from the proceeds of the sale in the Subject Property in an amount equal to six percent (6%) of the gross proceeds after the sale is consummated, which shall be shared with any real estate agent for the purchaser to the extent consistent with local practice, and (b) reimbursed from the proceeds for the receiver's reasonable and necessary expenditures to protect, secure, and preserve the value of the Subject Property that were first approved by the United States.  If there is no buyer's agent entitled to share the commission, or if the buyer's agent is affiliated with 1st Class Real Estate, then four point five (4.5%) percent shall be substituted for six percent (6%) in the preceding sentence.

15.     The receiver and the real estate agency through which he conducts business, and its employees, shall have no claim asserted against them relating to the receiver's duties under this Order, except for claims alleging gross negligence, willful misconduct, or inexcusable failure to comply with the Court's orders.  The receiver and his employees, agents, and attorneys shall have no personal liability with respect to any environmental liabilities arising out of or relating to the

Subject Property.  No suit against the receiver for damages shall be brought unless upon the prior grant by this Court of a motion for leave.

16.     The receiver may consult with counsel for the United States although said counsel does not represent the receiver.  The receiver may also request instructions from the Court regarding any responsibilities or activities about which the receiver is uncertain.  It is not anticipated that the receiver will need to retain counsel, but the receiver may petition the Court to appoint counsel to represent the receiver if the receiver concludes that counsel is required for a particular reason.

**IT IS THEREFORE ORDERED THAT** Plaintiff United States' Motion to Appoint Receiver (ECF No. 77) is granted in part and denied in part. The Court orders that a receiver be appointed to effectuate the enforcement of the subject federal tax liens by selling the Subject Property.

**IT IS FURTHER ORDERED THAT** the United States' request that Cody Petersen be appointed as the receiver for the Subject Property is denied, without prejudice.

**IT IS FURTHER ORDERED THAT within fourteen (14) days of entry of this Order**, the United States shall file a supplement to its Motion to Appoint Receiver either providing additional information regarding Mr. Petersen's experience and qualifications or propose another real estate professional to serve as receiver with appropriate documentation of their experience and qualifications. If the Browns have any objection to the United States' supplemental filing, they shall file their objection **within seven (7) days of the supplemental filing**. If the Court needs additional information or argument, it will set a hearing; otherwise, the Court will rule based upon the supplemental filing and any objection.

**IT IS FURTHER ORDERED THAT** the specified individual subsequently appointed by the Court as the receiver in this case shall have the duties, powers and responsibilities set out in Paragraphs 1–16 of this Order.

IT IS SO ORDERED.

Dated November 5, 2024, in Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge